### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ANCHOR HEALTH SYSTEMS, INC.,

     Plaintiff,

     v.                               CAUSE NO.: 2:16-CV-65-TLS

DENNIS RADOWSKI, THE CITY OF
HAMMOND, PROFESSIONAL CLAIMS
MANAGEMENT, INC., and UNITED
FOOD & COMMERCIAL WORKERS
UNION & EMPLOYERS CALUMET
REGION INSURANCE FUND,

     Defendants.

### OPINION AND ORDER

This matter is before the Court on the Defendants' Motions for Summary Judgment [ECF Nos. 91, 94], filed on March 25, 2019. The fundamental issue in this case is whether the Plaintiff, Anchor Health Systems, Inc., is entitled to reimbursement under various health insurance plans for the medical services it provided to Grace Radowski. The United Food & Commercial Workers Union & Employers Calumet Region Insurance Fund ("Calfund") argues that the services were custodial and therefore excluded from coverage. The City of Hammond and Professional Claims Management, Inc. ("City Defendants") argue that the City's health insurance plan is not subject to the Employee Retirement Income Security Act of 1974 (ERISA). The Defendants also argue that the Plaintiff failed to comply with Federal Rule of Civil Procedure 56(c) and Northern District of Indiana Local Rule 56-1(b). *See* UFCW Union & Employers Calumet Region Insurance Fund's Motion to Strike Plaintiff's Response [ECF No. 111]. The Court agrees with these arguments. As such, Calfund's Motion for Summary Judgment [ECF No. 94] and Motion to Strike [ECF No. 111] are GRANTED. The City Defendants'

Motion for Summary Judgment [ECF No. 91] is GRANTED in part and DENIED in part. Finally, the Court declines to exercise supplemental jurisdiction over the City of Hammond, Professional Claims Management, and Dennis Radowski.

## FAILURE TO COMPLY WITH FEDERAL RULE 56(c) AND LOCAL RULE 56-1(b)

The Defendants argue that their facts should be deemed admitted because the Plaintiff failed to comply with Federal Rule of Civil Procedure 56(c) and Northern District of Indiana Local Rule 56-1(b). Calfund also argues that the Plaintiff's factual assertions should be stricken because the Plaintiff's Response fails to comply with Northern District of Indiana Local Rule 56-1(b). The Court agrees.

"[D]istrict courts are not obliged in [an] adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (citing *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103–04 (7th Cir. 1990); *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 567 (7th Cir. 1993)). In the Northern District of Indiana, a motion for summary judgment "must include a section labeled 'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). The nonmoving party must then file and serve a response brief and "any materials that the party contends raise a genuine dispute." N.D. Ind. L.R. 56-1(b)(1). Furthermore, the nonmoving party's "response brief or its appendix must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2).

A Statement of Genuine Disputes "is a critical element of any response to a motion for summary judgment, because without it, the movant's version of the facts are accepted as undisputed." *Carragher v. Ind. Toll Road Concession Co.*, 936 F. Supp. 2d 981, 985 n.1 (N.D. Ind. 2013); *see also Caldwell v. Klemz*, No. 2:14-CV-455, 2017 WL 4620693, at *3 (N.D. Ind. Oct. 12, 2017). Furthermore, "[p]leadings that do not conform with the local rules may be stricken at the discretion of the court." *Goltz v. Univ. of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997) (citing *Tapy*, 896 F.2d at 1103; *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Sec. Sav. & Loan*, 125 F.R.D. 687, 688–89 (N.D. Ind. 1989)); *see also Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d 587, 596 (N.D. Ind. 2006). "Moreover, it is a reasonable judgment on the part of the district court that strict, consistent, 'bright line' enforcement is essential to obtaining compliance with the rule and to ensuring that long-run aggregate benefits in efficiency inure to district courts." *Goltz*, 177 F.R.D. at 640 (citing *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311 (7th Cir. 1995)). The interpretation and enforcement of local rules is left to the sound discretion of the district court. *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) (quoting *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003)); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). To that point, the Seventh Circuit has repeatedly upheld "the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of facts." *Waldridge*, 24 F.3d at 922–23 (collecting cases).

In pertinent part, Federal Rule of Civil Procedure 56(c) requires as follows:

(1)     *Supporting Factual Positions*. A party asserting that a fact . . . is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

. . .

(3)     *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(c)(1), (3).

If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The Court may also "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The enforcement of Federal Rule of Civil Procedure 56(e) is left to the sound discretion of the district court. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109–10 (7th Cir. 2014).

In this case, the Plaintiff's Response [ECF No. 105] to the City Defendants' Motion for Summary Judgment does not contain a section or appendix which identifies "the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). This Response is also insufficient under Federal Rule of Civil Procedure 56(c).

The Plaintiff's Response [ECF No. 106] to Calfund's Motion for Summary Judgment is also deficient. Namely, Calfund included a section labeled "Statement of Material Facts" that clearly identified the facts that it contended were not genuinely disputed. *See* N.D. Ind. L.R. 56-1(a). Each of Calfund's factual assertions are individually numbered and supported by a citation

4

to the record. The Plaintiff's brief does not contain a "Statement of Genuine Disputes" as required by Northern District of Indiana Local Rule 56-1(b)(2). Instead, the Plaintiff's Brief includes a section entitled "Historical Background- Undisputed Facts." Pl.'s Resp., pp. 2–3, ECF No. 106. This section largely provides a procedural overview of the case and does not identify purported disputes of material facts.[1] This section is also without citation to the record. *See* Fed. R. Civ. P. 56(c)(3). The Plaintiff's Response then contains a twelve-page section entitled "Statement of Facts Which Show There Is No Right To A Summary Judgment." *Id.* However, this section is argumentative, conclusory, and without adequate citation to the record. *See* Fed. R. Civ. P. 56(c)(1), (c)(3). Critically, the Plaintiff fails to respond to Calfund's Statement of Material Facts. *See* N.D. Ind. L.R. 56-1(b)(2). As indicated above, the Plaintiff could have responded to Calfund's Statement of Material Facts because each factual assertion was individually numbered and supported by a citation to the record. It was the Plaintiff's responsibility under Northern District of Indiana Local Rule 56-1(b)(2) to clearly identify any disputes of material fact. *See* N.D. Ind. L.R. 56-1(b)(2). The Court specifically finds that the Plaintiff's Response [ECF No. 106] fails to meet the requirements of Northern District of Indiana Local Rule 56-1(b)(2). Likewise, the Court finds that the Plaintiff's Response is deficient under Federal Rule of Civil Procedure 56(c).

Furthermore, the Plaintiff's failure to comply with Federal Rule of Civil Procedure 56(c) and Northern District of Indiana Local Rule 56-1(b)(2) has prejudiced Calfund. Specifically, as noted above, the factual assertions within the Plaintiff's Response [ECF No. 106] are without adequate citation to the record, are conclusory, and are intertwined with legal analysis. This

---

[1] However, this section does state that "[t]here is no dispute in the evidence that Grace Radowski was bedridden, could not speak, received feedings through a gastrointestinal tube, was receiving medications through intravenous injections, had bed sores and infections from the same and could not breathe except through a ventilator." Pl.'s Resp. at 3, ECF No. 106.

5

makes it difficult for Calfund to respond to the Plaintiff's factual assertions. Further, the Plaintiff failed to file a "Statement of Genuine Disputes" and did not directly respond to Calfund's Statement of Material Facts. *See* N.D. Ind. L.R. 56-1(b)(2). The Plaintiff's failure to comply with Northern District of Indiana Local Rule 56-1(b)(2) makes it difficult for Calfund to understand which of its factual assertions are in dispute. *See* N.D. Ind. L.R. 56(b)(2). Likewise, the City Defendants are prejudiced because the Plaintiff did not file a "Statement of Genuine Disputes." *See id.*

The Court is also burdened by the Plaintiff's failure to comply with Federal Rule of Civil Procedure 56(c) and Northern District of Indiana Local Rule 56-1(b)(2). "A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (quoting *Bordelon v. Chi. Sch. Reform. Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Furthermore, "a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Id.* (citing *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993)). It was the Plaintiff's duty, rather than the Court's, to properly support its opposition to the Defendants' Motions for Summary Judgment. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004); *see also Waldridge*, 24 F.3d at 923–24. Further, because the record in this case is complex and voluminous, failure to strictly enforce the above-mentioned rules would result in an inefficient use of judicial resources. *See Waldridge*, 24 F.3d at 922; *Goltz*, 177 F.R.D. at 640. The Court also emphasizes that the Plaintiff is a sophisticated company that is represented by local counsel.

Therefore, based upon the record as a whole, the Court finds that the Plaintiff's failure to comply with Federal Rule of Civil Procedure 56(c) and Northern District of Indiana Local Rule

56-1(b)(2) has prejudiced the Defendants and the Court. In an exercise of discretion, the Defendants' statements of material facts as supported by the evidence of record are deemed admitted. Further, the Plaintiff's factual assertions are stricken.

## STATEMENT OF MATERIAL FACTS

In January 2012, Grace Radowski was an employee of a grocery store and a member of the United Food & Commercial Workers Union (the "Union"). *See* Ex. A, Dennis Radowski Dep., p. 4, ECF No. 96-1.[2] As a member of the Union, Grace received health insurance through the Calumet Region Insurance Fund ("Calfund"). *Id*. The Calfund insurance plan is subject to the Employment Retirement Income Security Act of 1974. *See* Ex. U, Union's Answer to Second Am. Compl., p. 2, ECF No. 96-21. Following the termination of her employment, Grace elected to continue her insurance coverage. *Id.* However, custodial care was excluded from coverage under the Calfund insurance plan. *See* Ex. D, Calfund Insurance Plan, pp. 3–4, ECF No. 96-4. Specifically, Article 18(s) of the Calfund insurance plan stated that "Notwithstanding any other provision of the Plan to the contrary, Covered Expenses shall not include, and no payment shall

---

[2] Throughout this Opinion and Order, the Court will cite to the CM/ECF electronic page header rather than the page number listed on the actual document.

be made under the Plan, for . . . Custodial Care, except when provided by a Hospice." *Id.* The

insurance policy defined custodial care as follows:

> **Section 2.14.   Custodial Care.**
>
> Services or supplies; regardless of where or by whom they are provided, that:
>
> (a) a person without medical skills or background could provide or be trained to provide; or
>
> (b) are provided mainly to help the patient with daily living activities, including but not limited to, walking, getting in or out of bed, exercising or moving, bathing, using the toilet, administering enemas, dressing and assisting with hygiene needs, assistance with tube or gastrostomy feedings and stoma and ostomy maintenance, cleaning or preparation of meals, acting as a companion or sitter, or administering or supervising the administration of medication including but not limited to the administration of insulin and other injectable medications, changing of dressings, or as part of a maintenance treatment plan not reasonably expected to improve the patient's condition, sickness, injury or functional ability.

*Id.* at 18.

The Calfund insurance plan was administered by a board of trustees. *See id.* at 19. As

seen below, the board of trustees had broad discretionary powers when administering the policy:

> **Section 5.2     Administration**
>
> The Trustees or their designee shall have all rights, duties and powers necessary or appropriate for the administration of the Plan. In particular, the Trustees or their designee shall have and shall exercise complete discretionary authority to construe, interpret and apply all of the terms of the Plan, including all matters relating to eligibility for benefits, amount, time or form of payment, and any disputed or allegedly doubtful terms. . . .

*Id.*

On January 20, 2012, Grace suffered a debilitating stroke. *See* Radowski Dep. at 9–10,

ECF No. 96-1. Thereafter, Grace was in a comatose state until her death on September 5, 2014.

*Id.* at 3, 9–10; Ex. L, Comprehensive Adult Assessment, pp. 10–11, ECF No. 96-12. Grace was

dependent upon a ventilator for breathing. *See* Comprehensive Adult Assessment at 4, ECF

96-12. She was incontinent and required a catheter. *Id.* at 9. Grace was unable to dress herself or care for her personal hygiene. *Id.* at 11. She was unable to feed herself and was "fed nutrients through nasogastric tube or gastrostomy." *Id.* at 12. She was "[u]nable to take medication unless administered by another person." *Id.* at 13.

On the date of her stroke, Grace was rushed to Community Hospital in Munster, Indiana. *See* Radowski Dep. at 4–5, ECF No. 96-1. Grace received medical treatment at Community Hospital for several hours before being air-lifted to Rush Hospital in Chicago, Illinois. *Id.* at 5. Grace received treatment at Rush Hospital for several weeks before being transferred to Regency Hospital in East Chicago, Indiana. *Id.* On March 23, 2012, Grace was transferred to the ventilator unit of Whispering Pines Health Care Center, which is a nursing home. *Id.* at 6. In the spring of 2013, Whispering Pines notified Grace's husband, Dennis Radowski, that it would be discontinuing its ventilator care unit. *Id.* at 7–8. Dennis was unable to find another facility, so he decided to transfer Grace back to their home. *Id.* at 8.

Following the closure of the ventilator unit, Dennis Radowski selected the Plaintiff, Anchor Health Systems, to provide medical services to Grace. *Id.* at 8–9. The Plaintiff received authorization from Medicaid to perform the services. *See* Ex. F, Various Anchor Health Care Documents, p. 16, ECF No. 96-6. However, on May 17, 2013, the Plaintiff received notice that Calfund would not authorize the services because Calfund concluded that the proposed care was custodial. *Id.* at 14.

In June 2013, the Plaintiff contracted with Dennis Radowski to provide medical services to Grace. *See* Radowski Dep. at 8–9, ECF No. 96-1; Ex. K, Agreement to Establish Home Health Care Services, p. 4, ECF No. 96-11. Pursuant to their agreement, the Plaintiff would provide medical services for 8–12 hours per day. *See* Agreement to Establish Home Health Care Services

at 5, ECF No. 96-11; Comprehensive Adult Assessment at 3, ECF No. 96-12. The Plaintiff's care

included repositioning, administering nebulizer treatments, providing gastrointestinal feedings

("g-tube"), emptying a catheter bag, administrating injections, ventilation care, general grooming

care, and stoma ("bed-sore") maintenance. *See* Comprehensive Adult Assessment at 4–15, ECF

No. 96-12.

In September 2013, Medicaid withdrew authorization for the Plaintiff's medical services.

*See* Anchor Health Care Documents at 25, ECF No. 96-6. On April 9, 2014, the Plaintiff sent a

demand letter to Calfund which demanded payment for the services that it provided to Grace. *See*

Ex. L, Demand Letter, p. 2, ECF No. 96-14. On April 15, 2014, Calfund denied the Plaintiff's

request for payment. *See* Ex. O, Denial Letter, pp. 2–3, ECF No. 96-15. In relevant part, a claims

administrator explained that the Plaintiff's request for payment was denied because the services

it provided were custodial in nature and therefore excluded from coverage. *Id.* at 2. The denial

letter informed the Plaintiff how to appeal to the board of trustees. *Id.* at 2–3. Following this, the

parties continued to negotiate. *See* Ex. P, Email Communication Between CalFund and Plaintiff,

ECF No. 96-16.

On July 25, 2014, Calfund sent another denial letter to the Plaintiff. *See* Ex. Q, Second

Denial Letter, p. 2, ECF No. 96-17. In relevant part, Calfund stated that it was denying coverage

because it determined that the care was custodial and therefore excluded from coverage. *Id.* As

seen below, Calfund provided notice regarding the Plaintiff's right to appeal the denial of

coverage:

> . . . Custodial Care is a non-covered expense. As a result, your appeal will be referred to
> the Board of Trustees. The Board of Trustees will review the appeal without deference to
> this review.

**Right to Provide Additional Information.**  You may submit documents or information to the Appeal Committee of the Board of Trustees, in addition to the material you previously submitted. I encourage you to do so because the action taken at the Appeal Committee meeting will be final. Any additional information or clarification that you want the Trustees to consider should be submitted for review. The information or supporting documents should set forth your reasons for disagreement with the denial of the claim, and should address the specifics of the claim rejection . . . .

The information should be submitted to the Board of Trustees . . . . If you wish to do so, the information must be in writing and must be received by <u>August 25, 2014</u>.

*Note that you have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) following the denial of a claim on appeal. In addition, the Diagnosis code and Treatment code and their interpretation are available on request for any denied claim.*

*Id.* at 3 (emphasis in original).

On August 22, 2014, the Plaintiff appealed to the board of trustees and argued that it was entitled to payment because the services it provided were medically necessary rather than custodial. *See* Ex. R, Appeal of Health Claims, pp. 2–3, ECF No. 96-18. On September 12, 2014, the board of trustees determined that the services were custodial and denied the appeal. *See* Ex. S, Minutes of the Board of Trustees Meeting, p. 4, ECF No. 96-19. On September 15, 2014, Calfund sent an explanatory letter to the Plaintiff which stated that "the Trustees determined that, based on review by the Fund Medical Consultant, the care provided by Anchor Health Systems during the period in question was custodial in nature and consequently excluded under the Plan. For these reasons, the claim determination was upheld." Ex. T, Explanatory Letter, p. 2, ECF No. 96-20. The explanatory letter informed the Plaintiff of its right to bring a civil action under ERISA. *Id.*

Dennis Radowski was employed by the City of Hammond and was insured under the City of Hammond health plan (city insurance plan). *See* Ex. A, Radowski Dep., p. 4, ECF No. 93-1. At all relevant times, Grace was listed as a dependent on the city insurance plan. *Id.* The city

insurance plan was administered by Professional Claims Management, Inc. *See* Ex. C, City

Defendants' Responses to Plaintiff's First Request for Production, p. 20, ECF No. 93-3. David J.

Baker, the Chief Executive Officer for Professional Claims Management, stated that "the only

employer included in the City's health insurance plan is the City of Hammond and the agencies

and departments that are a part of the City, such as the Hammond Sanitary District. There are no

non-governmental entity employers that participate in the City's plan." Ex. D, Aff. of David J.

Baker ¶ 4, ECF No. 93-4. Based upon this, Baker concluded that the city insurance plan "is not a

multi-employer plan." *Id*. The Plaintiff also submitted claims to the city insurance plan, but these

claims were denied. *See* City Defendants' Responses to Plaintiff's First Request for Production

at 60, ECF No. 93-3.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The Supreme Court has explained that "the burden on the moving party may be

discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). "If the moving party has properly supported his motion, the burden shifts to the non-

moving party to come forward with specific facts showing that there is a genuine issue for trial."

*Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "To survive summary judgment, the

nonmoving party must establish some genuine issue for trial such that a reasonable jury could

return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir.

2012). Within this context, the Court must construe all facts and reasonable inferences from

those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No.*

*150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

The Court will only address the arguments which are necessary for the resolution of this case. Calfund argues it is entitled to summary judgment because the denial of coverage was reasonable and proper notice was given. The Court agrees with this argument and grants Calfund's request for summary judgment. In pertinent part, the City Defendants argue that the city insurance plan is not subject to ERISA. The Court agrees with this argument. Because Calfund has been dismissed and the city insurance plan is not subject to ERISA, the Court declines to exercise supplemental jurisdiction over the state law claims brought against the City of Hammond, Professional Claims Management, and Dennis Radowski.

**A.      The Calfund Insurance Plan**

In essence, Calfund argues that the Plaintiff's services were custodial and therefore excluded from coverage. As such, Calfund argues that it is entitled to summary judgment because (1) the denial of coverage was reasonable and (2) proper notice was given. The Court agrees.

The Employee Retirement Income Security Act of 1974 (ERISA) regulates private employee benefit plans. *See District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S.

125, 127 (1992); 29 U.S.C. § 1003(a). "A denial of benefits is normally reviewed de novo

'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan.'" *Speciale v. Blue Cross and Blue

Shield Ass'n*, 538 F.3d 615, 620 n.2 (7th Cir. 2008) (quoting *Firestone Tire & Rubber Co. v.

Bruch*, 489 U.S. 101, 115 (1989)). In this case, as seen below, Calfund's insurance policy gave

the board of trustees the discretionary authority to determine eligibility for benefits and to

construe the terms of the plan:

> The Trustees or their designee shall have all rights, duties and powers necessary
> or appropriate for the administration of the Plan. In particular, the Trustees or their
> designee shall have and shall exercise complete discretionary authority to construe,
> interpret and apply all of the terms of the Plan, including all matters relating to eligibility
> for benefits, amount, time or form of payment, and any disputed or allegedly doubtful
> terms.

Calfund Insurance Plan at 18, ECF No. 96-4.

When, as here, an ERISA plan grants the administrator discretionary authority to

determine benefits, courts review the administrator's decision under the arbitrary and capricious

standard. *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (citing *Tompkins v.

Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013)). Under the arbitrary and

capricious standard, the court will overturn the administrator's decision only if there is an

absence of reasoning to support it. *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 864

(7th Cir. 2011). Specifically, the court will affirm an administrator's decision "as long as (1) it is

possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the

decision is based on a reasonable explanation of relevant plan documents, or (3) the

administrator has based its decision on a consideration of the relevant factors that encompass the

important aspects of the problem." *Speciale*, 538 F.3d at 621 (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)).

In this case, custodial care was excluded from coverage under the Calfund insurance plan. *See* Calfund Insurance Plan at 3–4, ECF No. 96-4. Specifically, the plan stated that "Notwithstanding any other provision of the Plan to the contrary, Covered Expenses shall not include, and no payment shall be made under the Plan, for . . . Custodial Care, except when provided by a Hospice." *Id.* In relevant part, the insurance plan defined custodial care as follows:

> Services or supplies; regardless of where or by whom they are provided, that . . . are provided mainly to help the patient with daily living activities, including but not limited to, walking, getting in or out of bed, exercising or moving, bathing, using the toilet, administering enemas, dressing and assisting with hygiene needs, assistance with tube or gastrostomy feedings and stoma and ostomy maintenance, cleaning or preparation of meals, acting as a companion or sitter, or administering or supervising the administration of medication including but not limited to the administration of insulin and other injectable medications, changing of dressings, or *as part of a maintenance treatment plan not reasonably expected to improve the patient's condition, sickness, injury or functional ability*.

*Id.* at 18 (emphasis added).

The Plaintiff provided services to Grace for 8–12 hours per day. *See* Agreement to Establish Home Health Care Services at 4, ECF No. 96-11; Comprehensive Adult Assessment at 3, ECF No. 96-12. It is undisputed that the Plaintiff's care included repositioning, administering nebulizer treatments, providing gastrointestinal feedings ("g-tube"), emptying a catheter bag, administrating injections, ventilation care, general grooming care, and stoma ("bed-sore") maintenance. *See* Comprehensive Adult Assessment at 4, ECF No. 96-11; *see also* Pl.'s Resp. to Mot. for Summ. J., p. 3, ECF No. 106 ("There is no dispute in the evidence that Grace Radowski was bedridden, could not speak, received feedings through a gastrointestinal tube, was receiving medications through intravenous injections, had bed sores and infections from the same and could not breathe except through a ventilator."). Following her stroke, Grace was in a comatose

15

state until her death. *See* Comprehensive Adult Assessment at 10–11, ECF No. 96-12. Grace was dependent upon a ventilator for breathing. *Id.* at 4. She was incontinent and required a catheter. *Id.* at 9. Grace was unable to dress herself or care for her personal hygiene. *Id.* at 11. Grace was unable to feed herself and was "fed nutrients through nasogastric tube or gastrostomy." *Id.* at 12. She was "[u]nable to take medication unless administered by another person." *Id.* at 13.

Based upon Grace's medical condition, the board of trustees could have reasonably concluded that the Plaintiff's medical services were "part of a maintenance treatment plan not reasonably expected to improve the patient's condition, sickness, injury or functional ability." Calfund Insurance Plan at 18, ECF No. 96-4. As such, the board of trustees could have reasonably concluded that the Plaintiff's medical services were custodial and therefore excluded from coverage. *See id.* at 3–4. Accordingly, the denial of coverage was reasonable rather than arbitrary and capricious. *See Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 892–93 (7th Cir. 2012) (concluding that the administrator's denial of coverage was not arbitrary and capricious because the administrator could have reasonably concluded that the care provided at the nursing home was custodial, even if the patient received some skilled nursing care).

Likewise, Calfund provided the Plaintiff proper notice of the denial. On May 17, 2013, the Plaintiff received notice that Calfund would not reimburse the Plaintiff for the services it intended to provide to Grace. *See* Various Anchor Health Care Documents at 14, ECF No. 96-6. The Plaintiff began providing the services in June 2013. *See* Radowski Dep. at 8–9, ECF No. 96-1. The Plaintiff sent Calfund a demand letter in April 2014 for some of the services it provided to Grace. *See* Demand Letter, ECF No. 96-14. Calfund denied the Plaintiff's request for payment and informed the Plaintiff how to appeal to the board of trustees. *See* Denial Letter at 2–3, ECF No. 96-15; Second Denial Letter at 2, ECF No. 96-17. Calfund explained in pertinent part that it

was denying coverage because it concluded that the care was custodial. *See id*. The Plaintiff

appealed to the board of trustees, but the request was denied. *See* Minutes of the Board of

Trustees Meeting at 4, ECF No. 96-19. An explanatory letter informed the Plaintiff that the claim

was denied because the board of trustees determined that the Plaintiff's services were custodial.

*See* Explanatory Letter at 2, ECF No. 96-20. The explanatory letter informed the Plaintiff of its

right to bring an ERISA action. *Id.* Based upon the record in this case, the Court concludes that

Calfund provided proper notice. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140–41

(7th Cir. 1997) ("The notice must be written in a manner calculated to be understood by the

participant and the plan must provide the participant with a reasonable opportunity for a full and

fair review of the denial by a fiduciary of the decision denying the claim." (citing 29 U.S.C.

§ 1133; *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688–89 (7th Cir. 1992)). Therefore, for the

reasons stated above, Calfund's Motion for Summary Judgment [ECF No. 94] is granted.

**B.      The City Insurance Plan**

In relevant part, the City Defendants argue that the city insurance plan is not subject to

ERISA. Based upon the record in this case, the Court agrees.

The provisions of ERISA "shall not apply" to an employee benefit plan that is a

governmental plan. 29 U.S.C. § 1003(b)(1); *see also Graham v. Bd. of Educ. of the City of Chi.*,

No. 18 C 4761, 2019 WL 215098, at *2 (N.D. Ill. Jan. 16, 2019). "The term 'governmental plan'

means a plan established or maintained for its employees by the Government of the United

States, by the government of any State or political subdivision thereof, or by any agency or

instrumentality of any of the foregoing." 29 U.S.C. § 1002(32); *see also Simac v. Health All.*

*Med. Plans, Inc.*, 961 F. Supp. 216, 218 n.6 (C.D. Ill. 1997). An "entity is a political subdivision

if it is 'either (1) created directly by the state, so as to constitute departments or administrative

arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *Shannon v. Shannon*, 965 F.2d 542, 548 (7th Cir. 1992) (quoting *NLRB v. Nat. Gas Util. Dist. of Hawkins Cty., Tenn.*, 402 U.S. 600, 604–05 (1971) (emphasis omitted)).

It is undisputed that the City of Hammond is administered by individuals who are responsible to the general electorate. *See* Ind. Code § 36-4-1-1 *et seq*. Further, it is undisputed that "the only employer included in the City's health insurance plan is the City of Hammond and the agencies and departments that are a part of the City, such as the Hammond Sanitary District. There are no non-governmental entity employers that participate in the City's plan." Decl. of David J. Baker ¶ 4, ECF No. 93-4. Further, the Plaintiff has previously conceded that the city insurance plan is a governmental plan that is not subject to ERISA. *See* Report of Rule 26(f) Report Meeting, ECF No. 49; *see also Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal."). Therefore, based upon the record presented in this case, the Court concludes that city insurance plan is not subject to ERISA. Accordingly, the Court grants summary judgment in favor of the City of Hammond and Professional Claims Management, Inc. to the extent Plaintiff has brought an ERISA claim against them.

## C.  The Court's Supplemental Jurisdiction

The Court's federal question jurisdiction was premised upon the Plaintiff's ERISA claim. *See* 28 U.S.C. § 1331; *see also* Report of Rule 26(f) Report Meeting, ECF No. 49. However, as seen above, the Court has concluded that (1) Calfund is entitled to summary judgment and (2) the city insurance plan is not subject to ERISA. Because the Court has dismissed all claims over

which it had original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state law claims brought against the Defendants City of Hammond, Professional Claims Management, Inc., and Dennis Radowski.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). Although the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (internal quotation marks omitted). The presumption favoring dismissal may be rebutted if:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp. v. Metro Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal quotation marks omitted).

First, the statute of limitations has not run on the Plaintiff's state law claims. *See* Ind. Code § 34-11-2-11 (10-year statute of limitations for claims arising out of a written contract); Ind. Code § 34-11-8-1 (Indiana savings statute); *see also* 28 U.S.C. § 1367(d)(tolling period of limitations on claims under the court's supplemental jurisdiction during pendency of action and

19

for at least thirty days after dismissal of the claim). Second, after a careful review of the record, the Court finds that it has not expended substantial resources in this case. Rather, the Court's efforts have largely been focused on resolving the Plaintiff's ERISA claim at the summary judgment stage. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case."). Further, because the Court has not spent great effort on the Plaintiff's state law claims, there will not be a substantial duplication of effort if this matter is refiled in state court. *Cf. Tyler v. Trs. of Purdue Univ.*, 834 F. Supp. 2d 830, 846 (N.D. Ind. 2011) ("Here, both parties have briefed Tyler's state law claims, and this Court is intimately familiar with the details of the case. Requiring the state court to address these claims would cause a substantial duplication of effort.").

Finally, although the Court has determined that Calfund is entitled to summary judgment because the board of trustees could have reasonably concluded that the Plaintiff's services were custodial, it is not "absolutely clear" that this rationale should apply to the City Defendants. Namely, within their twenty-three-page brief, the City Defendants devote once sentence of analysis to whether coverage was properly denied due to a custodial care exclusion. *See* City Defs.' Br. in Supp. of Mot. for Summ. J., p. 18, ECF No. 92. "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *United States v. Wantuch*, 525 F.3d 505, 516 n.5 (7th Cir. 2008). As such, for the purposes of this federal lawsuit , the issue of whether the City Defendants properly denied coverage due to a custodial exclusion is waived. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). Rather than focusing their analysis on the issue of a custodial exclusion, the City Defendants devote the vast majority of their brief to issues of Indiana contract law and

20

whether the city insurance plan is governed by ERISA. The Court has reviewed the City

Defendants' state law arguments, and it is not "absolutely clear" that the Plaintiff could not

prevail under a state law breach of contract theory. At the very least, it is not "absolutely clear"

how the Plaintiff's claim against Dennis Radowski should be decided.

Thus, principles of federalism and judicial efficiency strongly indicate that this Court

should not exercise supplemental jurisdiction over the remaining Defendants. *See Huffman v.

Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own

law, along with the state court's greater expertise in applying state law, [are] paramount

concerns."). As such, the Court declines to exercise supplemental jurisdiction over the Plaintiff's

state law claims against the City of Hammond, Professional Claims Management, and Dennis

Radowski. The Plaintiff's state law claims against these Defendants are dismissed without

prejudice.

## CONCLUSION

For the reasons stated above, the United Food and Commercial Workers Union &

Employers Calumet Region Insurance Fund's Motion for Summary Judgment [ECF No. 94] and

Motion to Strike [ECF No. 111] are GRANTED. The Clerk of Court is DIRECTED to enter

judgment in favor of the Defendant United Food and Commercial Workers Union & Employers

Calumet Region Insurance Fund and against Plaintiff Anchor Health Care Systems, Inc.

The City Defendants' Motion for Summary Judgment [ECF No. 91] is GRANTED in

part and DENIED in part. The Court GRANTS summary judgment in favor of the Defendants

City of Hammond and Professional Claims Management, Inc. to the extent Plaintiff has brought

any federal claims against them. As to any federal claims, the Clerk of Court is DIRECTED to

enter judgment in favor of Defendants the City of Hammond and Professional Claims

Management, Inc. and against Plaintiff Anchor Health Care Systems, Inc. The Court DECLINES to exercise supplemental jurisdiction over the Plaintiff's state law claims against the City of Hammond, Professional Claims Management, Inc., and Dennis Radowski. The Plaintiff's remaining state law claims against the City of Hammond, Professional Claims Management, Inc., and Dennis Radowski are DISMISSED without prejudice. The Court's April 1, 2020 Order [ECF No. 112] is VACATED.

SO ORDERED on April 22, 2020.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT